UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.  Criminal No. 2:09-00137

JOSEPH CLEVELAND FERRELL
and
SOUTHERN AMUSEMENT CO., INC.

### DEFENDANTS' MOTION TO CONTINUE TRIAL

Defendants Joseph Cleveland Ferrell and Southern Amusement Co., Inc, respectfully move the Court to continue deadlines contained in the Court's existing Scheduling Order. Granting this motion is warranted for the following reasons: (1) the Government recently informed Defendants that it intends to disclose an exceptionally large volume of documents, but it does not know when it can do so because of encryption issues; (2) the United States Supreme Court has recently granted *certiorari* in three "honest services" cases, which could affect how this Court should rule on pretrial and trial issues relating to the 18 U.S.C. § 1346 counts; and (3) the Grand Jury recently returned a 51-count Superseding Indictment.

Given these circumstances, Defendants cannot fully prepare for trial before the existing trial date. For these reasons, and the reasons set forth below, Defendants move the Court to continue the trial date and other dates in the existing Scheduling Order to provide Defendants a full opportunity to prepare for trial.

1. **The Government's late disclosure of a vast quantity of documents leaves Defendants unable to prepare adequately for trial.**

The Government has been fully cooperative throughout discovery, including meeting with counsel earlier this week on a holiday.  But the Government also recently informed Defendants that it is in possession of an incalculable number of documents it intends to disclose at an uncertain time in the future.  From the Government's description of the evidence, using conservative estimates, it appears the Government will disclose 70 DVD's of emails containing literally millions of pages of relevant documents less than three months before trial.  Many of the documents date from the 1990's.  Given current time constraints and the significant number of documents already disclosed by the Government (approximately 80,000 to 100,000 pages of documents), Defendants cannot possibly review the undisclosed evidence before the existing trial date.  The categories of evidence the Government intends to disclose are summarized below and taken from e-mails from Hunter Smith to Ben Bailey and Bob Allen and discussions among them.

    a.    *300 gigabytes of email messages* - The Government has obtained approximately 300 gigabytes of stored email messages from one source, which includes emails from likely witnesses, but it has not been able to disclose the documents due to encryption issues.  According to the Government, it cannot disclose this evidence until it resolves the encryption issues, and it is uncertain of when the encryption issues will be resolved.  The government agrees that these as-of-yet undisclosed materials are important and may be material during the trial of the case.  To put this quantity of undisclosed data into perspective, 300 gigabytes of emails is approximately **30 million**

**pages** of stored email documents, which would fill more than 12,000 bankers' boxes.[1] Reviewing these documents, even using electronic search methods to narrow the scope of the search, will be a daunting task.

      b.    *Four file cabinets of documents plus 41 boxes of documents* – The Government seized four file cabinets of documents and 41 boxes of documents from the Defendants in June 2005. On October 9, 2009, the Government—for the first time—agreed to return two of the file cabinets and 23 boxes of the documents. The Government, however, has declined to return the remaining two file cabinets and 18 boxes of documents because it has not completed its review of the documents. Instead of returning the documents, the Government has agreed to make the Defendants' seized documents available for inspection at a mutually agreeable time. Defendants have attached as Exhibit A a copy of the search inventory from the June 2005 search. The inventory describes items generally and, is the only information Defendants have had to begin to identify what specific documents were seized during the 2005 search.

      c.    *Copies of seized hard drives* – During a search of Defendant Southern Amusement's property, the Government also seized two computers, each of which had a hard drive with about 80 gigabytes of storage capacity. Even though the government returned the computers, they have not yet provided Defendants with copies of the information seized from the hard drives. On October 14, 2009, the Government agreed to make copies of its copies of the seized hard drives available to the Defendants.

---

[1] Defendants calculated this number based on Internet resources indicating that one gigabyte of stored email messages represents approximately 100,099 pages of email messages. *See, e.g.*, http://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf.

d.   *Grand Jury transcripts* – The Government timely disclosed grand jury transcripts, but it disclosed the electronic versions of the transcripts in a format that was incompatible with Summation, an electronic trial preparation program Defendants are using to prepare for trial.  The use of such a program is necessary to organize the evidence in this case given that the investigation has spanned nearly two decades and has resulted in countless documents and an extraordinary number of potential trial witnesses.  The Government has worked cooperatively with Defense Counsel for some time to obtain the transcripts in a format that can be used in Summation, but Defendants are only now receiving the documents in a compatible format.  The delayed disclosure of Grand Jury transcripts in a useable format has delayed Defendants' review and analysis of the transcripts.

e.   *Documents recently disclosed* – On October 9, 2009, the Government disclosed seven disks containing additional evidence.  Those disks contain copies of taped recordings seized from Defendant Ferrell, additional 302 materials, and renumbered documents.  Defense Counsel has not had an opportunity to review or analyze these materials, which appear to be extensive.

Even if all of the documents described above were disclosed today, Defendants could not possibly review them all before the current trial date.  Thus, absent relief from the existing Scheduling Order, Defendants will be forced to defend themselves against the 51-count indictment with an incomplete understanding of all of the evidence in the Government's possession.

### 2. Three "honest services" cases currently before the Supreme Court could control this Court's analysis of determinative issues.

The United States Supreme Court recently granted *certiorari* in three cases addressing "honest services" issues. The outcome of these cases could control this Court's rulings on issues relating to the four § 1346 charges in the Superseding Indictment and alleged Racketeering Act Three, which incorporates those charges.

a. *Weyhrauch v. United States*, 129 S. Ct. 2863 (2009) (granting *cert.*) In *Weyhrauch*, the Ninth Circuit examined whether an "honest services" mail fraud prosecution against a former member of the Alaska House of Representatives required an independent state law violation. *United States v. Weyhrauch*, 548 F.3d 1237 (9th Cir. 2008). The Ninth Circuit held that the Government did not need to establish an independent state law violation. *Id.* The Supreme Court granted *certiorari* on the issue of "Whether, to convict a state official for depriving the public of its right to the defendant's honest services through the non-disclosure of material information, in violation of the mail-fraud statute . . ., the government must prove that the defendant violated a disclosure duty imposed by state law." As in *Weyhrauch*, the "honest services" allegations in the Superseding Indictment rely in part on purported duties not imposed by state law, but instead through sources such as the West Virginia Lottery's "Code of Conduct" and "Personnel Policies." Consequently, this Court will ultimately have to address the same issue the Supreme Court will resolve in *Weyhrauch*.

b. *Skilling v. United States*, --- S. Ct. ----, 2009 WL 1321026 (October 13, 2009) (granting *cert.*) - Jeffrey Skilling, a long-term Enron executive, was convicted on several charges including charges asserting an 18 U.S.C. § 1346 conspiracy after the collapse of Enron. The Fifth Circuit upheld the convictions. *United States v. Skilling*,

554 F.3d 529 (5th Cir. 2009).  The Supreme Court granted *certiorari* on the following issue: "Whether the federal 'honest services' fraud statute . . . requires the government to prove that the defendant's conduct was intended to achieve 'private gain' rather than to advance the employer's interests, and, if not, whether § 1346 is unconstitutionally vague."  Because of the breadth of the issues the Court will likely address in *Skilling* and its apparent willingness to address the constitutionality of § 1346, the Supreme Court's ruling could have far-reaching implications that could guide this Court's rulings on the § 1346 charges against the Defendants.

        c.     *Black v. United States*, 129 S. Ct. 2379 (2009) (granting *cert.*) – Conrad Black, the former Chairman and CEO of a publicly-held media company, was convicted of, among other things, "honest services" fraud charges.  The Seventh Circuit affirmed the convictions.  *United States v. Black*, 530 F.3d 596 (7th Cir. 2008).  The Supreme Court granted *certiorari* on the following issue:  "Whether 18 U.S.C. § 1346 applies to the conduct of a private individual whose alleged 'scheme to defraud' did not contemplate economic or other property harm to the private party to whom honest services were owed."  Like the other "honest services" cases, the *Black* opinion could affect this Court's decisions relating to the § 1346 charges in the Superseding Indictment.

The Supreme Court's opinions in these three cases will likely redefine the contours under which private citizens can be prosecuted under § 1346, and how "honest services" will be defined in relation to employees of the West Virginia Lottery.  These opinions could also affect the viability of "honest services" allegations made in support of the RICO count.  Consequently, a continuance of the trial until after the

Supreme Court issues opinions in these cases would provide the Court, and the parties, much needed guidance in how to proceed with the "honest services" allegations in the Superseding Indictment.

### 3. The Grand Jury Recently Returned a 51-Count Superseding Indictment.

The original 48-count Indictment was unsealed on June 8, 2009. On October 1, 2009, less than three months before the current trial date, the Grand Jury returned a 51-Count Superseding Indictment. While there are few new factual allegations in the Superseding Indictment, some of the Government's legal theories are modified, and Defendants must now defend against three new counts. The return of the Superseding Indictment therefore contributes to the severe time constraints created by the other issues discussed herein.

### Request for Relief

For all these reasons, the undersigned, who have discussed these matters with counsel for the United States, respectfully request that the Court reschedule further proceedings in this matter as follows, to the extent that such dates are available for the Court:

1. Jury trial during the month of August 2010;

2. Pretrial motions hearing during the week of June 14, 2010; and

3. Pretrial motions due on or before May 28, 2010.

Defendants also respectfully ask the Court to continue the discovery response deadlines to dates at least six weeks from the date of this motion, subject to further discussion between the parties about the adequacy and reality of such an extension.

7

**Respectfully submitted,
Joseph Cleveland Ferrell and
Southern Amusement Co., Inc.,**

**By their respective Counsel,**


*/s/ Benjamin L. Bailey*
Benjamin L. Bailey (WV Bar ID # 200)
Christopher S. Morris (WV Bar ID # 8004)
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia  25301
(304) 345-6555
(304) 342-1110 *facsimile*
*Counsel for Joseph Cleveland Ferrell*


*/s/ Robert B. Allen*
Robert B. Allen (WV Bar ID #110)
Allen Guthrie McHugh & Thomas, PLLC
500 Lee Street, East, Suite 800
Charleston, WV  25301
(304) 345-7250
(304) 345-9941 *facsimile*
*Counsel for Southern Amusement Co., Inc..*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**UNITED STATES OF AMERICA**

v.   CRIMINAL NO. 2:09-00137

**JOSEPH CLEVELAND FERRELL**
**SOUTHERN AMUSEMENT CO., INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the **"DEFENDANTS' MOTION TO CONTINUE TRIAL"** was served upon counsel of record, via the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record on this 16th day of October, 2009:

> Hunter P. Smith, Jr., Esq.
> Assistant U. S. Attorney
> 4000 United States Courthouse
> 300 Virginia Street, East
> Charleston, West Virginia  25301

> */s/ Benjamin L. Bailey*
> Benjamin L. Bailey (WV Bar ID # 200)

9