UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2008
MARCH 2, 2010 SESSION

```
                                    F I L E D

                                    MAR 3 2010

                          TERESA L. D........, CLERK
                               U.S. District Court
                          Southern District of West Virginia
```

UNITED STATES OF AMERICA

v.                          CRIMINAL NO.   2:09-00137
                                           18 U.S.C. § 1962(c)
                                           18 U.S.C. § 1955
JOSEPH CLEVELAND FERRELL                    18 U.S.C. § 1952
SOUTHERN AMUSEMENT CO., INC.                18 U.S.C. § 2
                                           18 U.S.C. § 1341
                                           18 U.S.C. § 1346
                                           18 U.S.C. § 666(a)(2)
                                           18 U.S.C. § 1503
                                           42 U.S.C. § 408(a)(4)
                                           15 U.S.C. § 1173(a)(3)
                                           15 U.S.C. § 1176
                                           26 U.S.C. § 7202


                        S E C O N D
                    S U P E R S E D I N G
                    I N D I C T M E N T

The Grand Jury Charges:

                        COUNT ONE
                       Racketeering

                      The Enterprise

        1.   At various times relevant to this Indictment defendant

JOSEPH CLEVELAND FERRELL and others known and unknown to the Grand

Jury were employees and associates of Southern Amusement Co., Inc.

("Southern Amusement"), and White Amusement Company ("White

Amusement"), corporations whose employees and associates engaged in

illegal gambling, interstate travel in aid of racketeering,

bribery, mail fraud, and conspiracy to obstruct state and local law enforcement to facilitate illegal gambling, and which operated principally in West Virginia and Kentucky.

2.    Southern Amusement and White Amusement, including their employees and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals and corporations associated in fact.    This enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.    This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

<u>Purposes of the Enterprise</u>

3.    The purposes of the enterprise included the following:

a.    enriching its employees and associates through, among other things, the operation of illegal gambling businesses; and

b.    preserving and protecting its power, territory and profits through the use of bribery, fraud, obstruction of justice, and obstruction of state and local law enforcement.

2

<u>Role of the Defendant</u>

4.   Defendant JOSEPH CLEVELAND FERRELL participated in the operation and management of the enterprise.

   a.   Defendant FERRELL was an employee of Southern Amusement and White Amusement and exercised complete control over the operation and management of the two companies.

   b.   Under the direction of defendant FERRELL, the leader of the enterprise, the employees and associates of the enterprise participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

5.   At various times relevant to this Indictment, defendant FERRELL was an owner, officer, and employee of Southern Amusement and White Amusement and at all times relevant to this Indictment was responsible for the operation of the legal and illegal business of these corporations.   The stock of Southern Amusement and White Amusement was owned at various times by defendant FERRELL, his wife, and others, and for the period of approximately 1997 through 2004 the stock of White Amusement was completely owned by Southern Amusement.

6.   At various times relevant to this Indictment defendant FERRELL was a candidate for and was a member of the West Virginia House of Delegates, a legislative body with the authority and jurisdiction to disallow, permit, limit, regulate, and control the operation of and profit from video lottery machines in the State of West Virginia.   Defendant FERRELL sought this position in order to protect the business of Southern Amusement by, among other things,

3

influencing proposed and pending legislation regarding the operation of video lottery machines.

## Means and Methods of the Enterprise

7.   Among the means and methods by which defendant FERRELL and the employees and associates of the enterprise conducted and participated in the conduct of the affairs of the enterprise were the following:

     a.   the operation of illegal gambling machines in West Virginia and Kentucky;

     b.   travel between West Virginia and Kentucky in order to manage an illegal gambling business and to bring the proceeds from that business to West Virginia;

     c.   bribery of a West Virginia Lottery inspector, a mayor, and a sheriff-elect;

     d.   the payment of an employee in cash in furtherance of a scheme to defraud the Social Security Administration;

     e.   obstruction of justice; and

     f.   bribery of voters to vote for defendant FERRELL as a candidate for the West Virginia House of Delegates.

## The Racketeering Violation

8.   From approximately 1995 through in or about July 2008, at or near Logan County, within the Southern District of West Virginia, and elsewhere, defendant JOSEPH CLEVELAND FERRELL, together with others known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described above, which was an enterprise engaged in, and the activities of

which affected, interstate and foreign commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, that is, through the commission of Racketeering Acts One through Thirteen set forth in paragraphs 9 through 17 below.

The Pattern of Racketeering Activity

9.   The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

10.   Racketeering Act One --
     Illegal Gambling Business

From on or about May 16, 1995, through on or about December 31, 2001, in the Southern District of West Virginia and elsewhere, defendant JOSEPH CLEVELAND FERRELL did knowingly conduct, finance, manage, supervise, direct, and own an illegal gambling business, that is, a business that:

(i) involved maintaining and operating slot machines, video poker machines and similar equipment in violation of West Virginia Code §§ 61-10-1, 61-10-5 and 61-10-6,

(ii) involved five or more persons who conducted, financed, managed, supervised, and directed the gambling business, and

(iii) remained in substantially continuous operation for a period in excess of thirty days and had gross revenue in excess of $2,000 in a single day,

in violation of 18 U.S.C. § 1955.

11.   Racketeering Act Two --
      Conspiracy with the Known Mayor to obstruct state and
      local law enforcement to facilitate illegal gambling
      businesses and bribery

Defendant JOSEPH CLEVELAND FERRELL committed the following

acts, any one of which alone constitutes Racketeering Act Two.

      Racketeering Act 2a --
      Conspiracy with the Known Mayor to obstruct state and
      local law enforcement to facilitate illegal gambling
      businesses

     a.   From no later than May 16, 1995, and continuing

thereafter until in or about December 2001, in the Southern

District of West Virginia and elsewhere, defendant JOSEPH CLEVELAND

FERRELL and an individual known to the Grand Jury (hereafter "the

Known Mayor") who is named here as an unindicted co-conspirator and

not as a defendant, knowingly conspired to obstruct the enforcement

of the criminal laws of the State of West Virginia, that is, West

Virginia Code Sections 61-10-1, 61-10-5 and 61-10-6 dealing with

gambling, with the intent to facilitate an illegal gambling

business.

     b.   At all times during the course of the conspiracy, the

Known Mayor was an elected official of a political subdivision of

a state, namely, mayor of the city of Logan, West Virginia.

     c.   At all times during the course of the conspiracy,

defendant  FERRELL  conducted,  financed,  managed,  supervised,

directed, and owned all or part of an illegal gambling business,

which business involved maintaining and operating slot machines,

video poker machines and similar equipment, all in violation of the aforesaid laws of the State of West Virginia.

d.   At all times during the course of the conspiracy, the illegal gambling business involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of said business and said business remained in substantially continuous operation for a period in excess of thirty days.

e.   It was defendant FERRELL's purpose in this conspiracy to enrich himself with proceeds from illegal gambling business being conducted by Southern Amusement and White Amusement and to continue the businesses' illegal operations without interference from law enforcement.

f.   It was the Known Mayor's purpose in this conspiracy to enrich himself through the receipt of bribes and gratuities and other favors from defendant FERRELL and to continue in his office as mayor of the city of Logan through garnering and maintaining the unlawful financial support of defendant FERRELL.

<u>Manner and Means of the Conspiracy</u>

g.   It was part of the conspiracy that defendant FERRELL would and did make cash payments to and give things of value to the Known Mayor for the purpose of influencing him in the performance of his duties as the Mayor of the City of Logan, West Virginia, particularly in regard to his duties to enforce state laws against gambling within the City of Logan and in return for his promise to

protect defendant FERRELL and his illegal gambling business in and around the City of Logan, West Virginia, from investigation and prosecution.

h.   It was further part of the conspiracy that the Known Mayor would and did use his authority as Mayor of the City of Logan to protect defendant FERRELL and his illegal gambling business in and around the City of Logan, West Virginia, from investigation and prosecution.

<u>Overt Acts</u>

i.   In furtherance of the conspiracy and to effect its object, defendant FERRELL performed in the Southern District of West Virginia the following overt acts, among others:

i.   In or about March 1995, at or near the City of Logan, Logan County, West Virginia, defendant FERRELL paid an illegal cash bribe to the Known Mayor while the Known Mayor was seeking re-election to the office of Mayor of the City of Logan, West Virginia.

ii.  In or about November 1996, defendant FERRELL paid for the Known Mayor's travel to and from and lodging and entertainment in New Orleans, Louisiana.

iii. In or about March 1999, at or near Logan, Logan County, West Virginia, defendant FERRELL paid an illegal cash bribe to the Known Mayor while the Known Mayor was seeking re-election to the office of Mayor of the City of Logan, West Virginia.

In violation of Title 18, United States Code, Section 1511.

Racketeering Act 2b --
Bribery - the Known Mayor

In or about March 1995, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL conferred pecuniary benefits upon the Known Mayor as consideration for the official actions of the Known Mayor as a public servant, that is, defendant FERRELL paid an illegal cash bribe to the Known Mayor while the Known Mayor was seeking re-election to the office of Mayor of the City of Logan, West Virginia, in return for The Known Mayor's promise to protect defendant FERRELL in the operation of his illegal gambling businesses in the City of Logan, in violation of West Virginia Code Section 61-5A-3 (Bribery in Official and Political Matters).

Racketeering Act 2c --
Bribery - the Known Mayor

In or about November 1996, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL conferred pecuniary benefits upon the Known Mayor as consideration for the official actions of the Known Mayor as a public servant, that is, defendant FERRELL paid for the Known Mayor's travel to and from and lodging and entertainment in New Orleans, Louisiana, in return for the Known Mayor's promise to protect defendant FERRELL in the operation of his illegal gambling businesses in the City of Logan, in violation

of West Virginia Code Section 61-5A-3 (Bribery in Official and Political Matters).

Racketeering Act 2d --
Bribery - the Known Mayor

In or about March 1999, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL conferred pecuniary benefits upon the Known Mayor as consideration for the official actions of the Known Mayor as a public servant, that is, defendant FERRELL paid an illegal cash bribe to the Known Mayor while the Known Mayor was seeking re-election to the office of Mayor of the City of Logan, West Virginia in return for the Known Mayor's promise to protect defendant FERRELL in the operation of his illegal gambling businesses in the City of Logan, in violation of West Virginia Code Section 61-5A-3 (Bribery in Official and Political Matters).

Racketeering Act 2e --
Bribery - the Known Mayor

In or about the Summer of 2002, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL conferred pecuniary benefits upon the Known Mayor as consideration for the official actions of the Known Mayor as a public servant, that is, defendant FERRELL took the Known Mayor on an all-expense-paid trip to Myrtle Beach, South Carolina, as consideration for the Known Mayor's past and continuing protection of defendant FERRELL in the operation of

his illegal gambling businesses in the City of Logan, in violation of West Virginia Code Section 61-5A-3 (Bribery in official and political matters).

12.   Racketeering Act Three --
      Bribery - the Sheriff-Elect of Logan County

In or about December 2000, in and near Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL conferred pecuniary benefits upon the Sheriff-Elect of Logan County as consideration for his official actions as a public servant, that is, defendant FERRELL paid a cash bribe to the Sheriff-Elect of Logan County in return for his promise not to appoint an individual known to the Grand Jury as the Sheriff-Elect's chief law enforcement deputy in the Logan County Sheriff's office and to protect defendant FERRELL against law enforcement action in the operation of his illegal gambling businesses in Logan County, in violation of West Virginia Code Section 61-5A-3 (Bribery in Official and Political Matters).

## Vote Buying

13.   Defendant JOSEPH CLEVELAND FERRELL carried out and caused the following Racketeering Acts for the purpose of obtaining and maintaining for himself the office of Member of the West Virginia House of Delegates, thereby furthering and protecting the interests of the enterprise, as described more fully in paragraph 6 above.

11

a.   Racketeering Act Four --
     Bribery - the First Known Voter

On or about March 25, 2000, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the First Known Voter") as consideration for his vote and the votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the May 2000 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

b.   Racketeering Act Five --
     Bribery - the Second Known Voter

In or about May, 2000, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the Second Known Voter") as consideration for his vote and the votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the May 2000 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

c.   Racketeering Act Six --
     Bribery - the Third Known Voter

On or about May 13, 2002, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the Third Known Voter") as consideration for his vote and the votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the May 2002 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

d.   Racketeering Act Seven --
     Bribery - the Fourth Known Voter

On or about May 13, 2002, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the Fourth Known Voter") as consideration for his vote and the votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the May 2002 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

e.   Racketeering Act Eight --
     Bribery - the Fifth Known Voter

On or about May 13, 2002, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the Fifth Known Voter") as consideration for his vote and votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the May 2002 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

f.   Racketeering Act Nine --
     Bribery - the Second Known Voter

In or about May 2002, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the Second Known Voter") as consideration for his vote and the votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the 2002 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

g.   Racketeering Act Ten --
     Bribery - the Second Known Voter

In or about May 2004, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia defendant JOSEPH CLEVELAND FERRELL, who was then a candidate for election to the office of Member of the West Virginia House of Delegates, did pay and offer to pay a cash bribe to an individual known to the Grand Jury ("the Second Known Voter") as consideration for his vote and the votes of others to be cast for defendant JOSEPH CLEVELAND FERRELL in the 2004 primary election, in violation of West Virginia Code Section 3-9-13(a)(Vote Buying).

14.   Racketeering Act Eleven --
      Illegal Gambling Business and Interstate Travel
      and Transportation in Aid of Racketeering Enterprise

Defendant JOSEPH CLEVELAND FERRELL committed the following acts, any one of which alone constitutes Racketeering Act Eleven.

Racketeering Act 11a --
Illegal Gambling Business

Count Two of this Indictment is incorporated by reference into this Racketeering Act Eleven as Racketeering Act 11a.

Racketeering Act 11b --
Illegal Gambling Business

From in or about the fall of 2003 through in or about April 2008, in or near Pike County, Kentucky, defendant JOSEPH CLEVELAND FERRELL did commit an act involving gambling, that is, did knowingly advance and profit from unlawful gambling activity by setting up and operating gambling devices, as defined in Kentucky Revised Statutes 528.010(4), in violation of Kentucky Revised Statutes 528.020(1)(c).

Racketeering Act 11c --
Illegal Gambling Business

From in or about the fall of 2003 through in or about April 2008, in or near Pike County, Kentucky, defendant JOSEPH CLEVELAND FERRELL did commit an act involving gambling, that is, did conspire with individuals known to the Grand Jury to advance and profit from unlawful gambling activity involving gambling devices, as defined in Kentucky Revised Statutes 528.010(4), in violation of Kentucky Revised Statutes 528.040(1).

Racketeering Acts 11d-11y --
Interstate Travel and Transportation in Aid of
Racketeering

To obtain his proceeds from the Kentucky gambling business, defendant JOSEPH CLEVELAND FERRELL committed the crimes set forth in Counts Three through Twenty-Four of this Indictment, which are incorporated by reference into this Racketeering Act as Racketeering Acts 11d through 11y as follows:

16

| Racketeering Act | Count | Trip Date | Distribution Amount |
|---|---|---|---|
| 11d | 3 | 01/03/2005 | $1,286.00 |
| 11e | 4 | 02/07/2005 | $1,381.00 |
| 11f | 5 | 03/14/2005 | $1,333.00 |
| 11g | 6 | 03/28/2005 | $1,488.00 |
| 11h | 7 | 04/25/2005 | $2,320.00 |
| 11i | 8 | 05/23/2005 | $1,185.00 |
| 11j | 9 | 06/06/2005 | $1,761.00 |
| 11k | 10 | 06/13/2005 | $1,440.00 |
| 11l | 11 | 06/27/2005 | $1,149.00 |
| 11m | 12 | 07/04/2005 | $1,436.00 |
| 11n | 13 | 09/27/2005 | $1,282.00 |
| 11o | 14 | 12/19/2005 | $1,204.00 |
| 11p | 15 | 03/27/2006 | $1,408.00 |
| 11q | 16 | 06/19/2006 | $1,496.00 |
| 11r | 17 | 09/18/2006 | $1,370.00 |
| 11s | 18 | 12/11/2006 | $1,031.00 |
| 11t | 19 | 01/08/2007 | $1,317.00 |
| 11u | 20 | 04/09/2007 | $1,320.00 |
| 11v | 21 | 07/02/2007 | $1,419.00 |
| 11w | 22 | 10/15/2007 | $1,489.00 |
| 11x | 23 | 01/07/2008 | $1,525.00 |
| 11y | 24 | 03/26/2008 | $1,770.00 |

15.    Racketeering Act Twelve --
       Mail Fraud and Bribery - the Known Investigator

Defendant JOSEPH CLEVELAND FERRELL corrupted a West Virginia Lottery investigator, who had been assigned to inspect and regulate his video lottery operations, through illegal payments and bribes, by committing the following acts, any one of which alone constitutes Racketeering Act Twelve.

       Racketeering Acts 12a-12d --
       Mail Fraud

Counts Twenty-Five through Twenty-Eight of this Indictment are realleged and incorporated by reference into this Racketeering Act Twelve as follows:

| Racketeering Act | Count | Defendant | Date |
|---|---|---|---|
| 12a | 25 | JOSEPH CLEVELAND FERRELL | 08/01/05 |
| 12b | 26 | JOSEPH CLEVELAND FERRELL | 07/30/06 |
| 12c | 27 | JOSEPH CLEVELAND FERRELL | summer 2007 |
| 12d | 28 | JOSEPH CLEVELAND FERRELL | summer 2008 |

       Racketeering Act 12e-12h --
       Bribery - the Known Investigator

On or about the following dates, in and near Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL conferred pecuniary benefits, that is, cash, upon a West Virginia Lottery Investigator in approximately the following amounts, in consideration for her official actions as a public servant, in violation of West Virginia Code Section 61-5A-3 (Bribery in Official and Political Matters).

18

| Racketeering Act | Date | Amount |
|---|---|---|
| 12e | February 18, 2006 | $300 |
| 12f | Mid-February 2007 | $300 |
| 12g | May 26, 2007 | $300 |
| 12h | June 11, 2007 | $2,000 |

16.   Racketeering Act Thirteen --
        Mail Fraud - the Known Employee

Defendant   JOSEPH   CLEVELAND   FERRELL   helped   an   employee
receiving   disability   benefits   cheat   the   Social   Security
Administration by paying the employee in cash and not reporting the
payments, as more fully set out in Counts Thirty-Three through
Thirty-Eight of this Indictment, and obstructed justice as more
fully set out in Counts Thirty-Nine and Forty of this Indictment,
and which are incorporated by reference into this Racketeering Act
Thirteen   as   follows,   any   one   of   which   alone   constitutes
Racketeering Act Thirteen:

| Racketeering Act | Count | Defendant | Date |
|---|---|---|---|
| 13a | 33 | JOSEPH CLEVELAND FERRELL | 06/02/2006 |
| 13b | 34 | JOSEPH CLEVELAND FERRELL | 09/02/2006 |
| 13c | 35 | JOSEPH CLEVELAND FERRELL | 03/02/2007 |
| 13d | 36 | JOSEPH CLEVELAND FERRELL | 09/02/2007 |
| 13e | 37 | JOSEPH CLEVELAND FERRELL | 03/02/2008 |
| 13f | 38 | JOSEPH CLEVELAND FERRELL | 07/03/2008 |

Racketeering Act 13g --
<u>Obstruction of Justice</u>

Count Thirty-Nine of this Indictment is realleged and incorporated by reference into this Racketeering Act Thirteen as Racketeering Act 13g.

Racketeering Act 13h --
<u>Obstruction of Justice</u>

Count Forty of this Indictment is realleged and incorporated by reference into this Racketeering Act Thirteen as Racketeering Act 13h.

All in violation of Title 18, United States Code, Section 1962(c).

## COUNT TWO

### Illegal Gambling Business

From in or about the fall of 2003 through in or about April 2008, in or near Logan County, West Virginia, within the Southern District of West Virginia, and also in the Eastern District of Kentucky, defendant JOSEPH CLEVELAND FERRELL did knowingly conduct, finance, manage, supervise, direct, and own an illegal gambling business, that is, a business that:

(i) involved maintaining and operating slot machines, video poker machines and similar equipment in violation of §,§ 528.020, 528.030, and 528.040 of the Kentucky Revised Statutes Annotated;

(ii) involved five or more persons who conducted, financed, managed, supervised, and directed the gambling business in the Southern District of West Virginia and the Eastern District of Kentucky; and

(iii) remained in substantially continuous operation for a period in excess of thirty days.

In violation of Title 18, United States Code, Section 1955.

## COUNTS THREE THROUGH TWENTY-FOUR

## Interstate Travel and Transportation
## in Aid of Racketeering Enterprise

1.   On approximately a weekly basis, from in or about the fall of 2003 through in or about the spring of 2008, within the Southern District of West Virginia and the Eastern District of Kentucky, defendant JOSEPH CLEVELAND FERRELL traveled in interstate commerce and caused others to travel in interstate commerce, that is, between at or near Logan, West Virginia, and at or near South Williamson, Kentucky, and did use and cause others to use facilities in interstate commerce, with the intent: (a) to distribute the proceeds from an unlawful activity, and (b) otherwise to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving gambling in violation of the laws of the State of Kentucky and the United States.

2.   On or about the following dates, defendant JOSEPH CLEVELAND FERRELL traveled and caused others to travel between West Virginia and Kentucky, and did use facilities in interstate commerce, in connection with the distribution of unlawful gambling proceeds in the following approximate amounts:

| Count | Date | Distribution Amount |
|---|---|---|
| 3 | 01/03/2005 | $1,286.00 |
| 4 | 02/07/2005 | $1,381.00 |
| 5 | 03/14/2005 | $1,333.00 |
| 6 | 03/28/2005 | $1,488.00 |
| 7 | 04/25/2005 | $2,320.00 |
| 8 | 05/23/2005 | $1,185.00 |
| 9 | 06/06/2005 | $1,761.00 |
| 10 | 06/13/2005 | $1,440.00 |
| 11 | 06/27/2005 | $1,149.00 |
| 12 | 07/04/2005 | $1,436.00 |
| 13 | 09/27/2005 | $1,282.00 |
| 14 | 12/19/2005 | $1,204.00 |
| 15 | 03/27/2006 | $1,408.00 |
| 16 | 06/19/2006 | $1,496.00 |
| 17 | 09/18/2006 | $1,370.00 |
| 18 | 12/11/2006 | $1,031.00 |
| 19 | 01/08/2007 | $1,317.00 |
| 20 | 04/09/2007 | $1,320.00 |
| 21 | 07/02/2007 | $1,419.00 |
| 22 | 10/15/2007 | $1,489.00 |
| 23 | 01/07/2008 | $1,525.00 |
| 24 | 03/26/2008 | $1,770.00 |

3.   Thereafter defendant JOSEPH CLEVELAND FERRELL did perform
and attempt to perform acts of distribution of the proceeds from an
unlawful activity and acts which did otherwise promote, manage,

establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity.

In violation of Title 18, United States Code, Sections 1952 and 2(b).

## COUNTS TWENTY-FIVE THROUGH TWENTY-EIGHT

## Mail Fraud

### Introduction

At all relevant times:

1.    Defendant JOSEPH CLEVELAND FERRELL was associated with and was an employee and agent of defendant SOUTHERN AMUSEMENT CO., INC., which was a licensee of the West Virginia Lottery and had business with the West Virginia Lottery, including supplying video lottery machines to various retail establishments in West Virginia for use in the state-controlled "Limited Video Lottery" and in the maintenance and servicing of those video lottery machines.

2.    A person known to the Grand Jury (hereafter "the Known Investigator") was employed by the West Virginia Lottery as an "Investigator II."  In this capacity, the Known Investigator's job responsibilities included:

a.    monitoring and inspecting video lottery operations in southern West Virginia with the goal of insuring that video lottery operators and retailers were conducting their operations in accordance with the laws of the State of West Virginia and the rules and regulations of the West Virginia Lottery;

b.    investigating claims that such operations were being conducted in contravention of those laws, rules and regulations; and

c.      supervising, monitoring, and recording access to the so-called "logic areas" of the lottery machines that housed those components that controlled the operation of the machines' video lottery games.

### Duties of the Known Investigator

3.      As a public employee and an employee of the West Virginia Lottery, the Known Investigator held a position of public trust and was subject to provisions of the "West Virginia Governmental Ethics Act," the "State Lottery Act," the "Code of Conduct of the West Virginia Lottery," and the West Virginia Lottery "Personnel Policies."

4.      The West Virginia Governmental Ethics Act stated in pertinent part that:

a.      the independence and impartiality of public employees is essential for the maintenance of the confidence of our citizens in the operation of a democratic government;

b.      public employees who use their employment for personal gain or who seek to benefit narrow economic interests at the expense of the public at large undermine public confidence in the integrity of a democratic government; and

c.      high moral and ethical standards among public employees are essential to the conduct of free government.

5.      Therefore, under the terms of the West Virginia Governmental Ethics Act, the Known Investigator, as a public

employee, had a duty to act independently and impartially and free from self-interest, undue influence, and favoritism in the performance of her official tasks.

6.   Further, under the terms of the West Virginia Governmental Ethics Act, the Known Investigator had a duty to refrain from accepting and receiving gifts from any person whom the Known Investigator knew was engaged in activities which were regulated and controlled by the West Virginia Lottery.

7.   Further, under the terms of the West Virginia Governmental Ethics Act, the Known Investigator had a duty to refrain from receiving compensation for providing services that she was required to provide in carrying out her public job responsibilities.

8.   Under the terms of the State Lottery Act, the Known Investigator had a duty to refrain from accepting and receiving gifts, gratuities, and other things of value from any licensee of the West Virginia Lottery.

9.   Under the terms of the Code of Conduct of the West Virginia Lottery, the Known Investigator had a duty to refrain from:

a.   conduct constituting an actual conflict of interest or which would give a reasonable basis for the impression of a conflict between her personal interests and the public interest;

b.   taking action or failing to perform some duty which would result in her personal benefit or give preferential treatment to any citizen;

c.   requesting or receiving, in any manner whatsoever, any compensation, gift, gratuity, or thing of value for the performance of her official duties or for influencing or appearing to influence such performance;

d.   requesting or receiving, in any manner whatsoever, any compensation, gift, gratuity, or thing of value from a licensee of the West Virginia Lottery;

e.   giving reasonable basis for the impression that any person could improperly influence her or unduly enjoy her favor in the performance of her official duties or that she was unduly affected by the position or influence of any person; and

f.   accepting, directly or indirectly, any gift, gratuity, favor, entertainment, loan, loan guarantee, or any other thing of monetary value from a person, association, or corporation, which she knew or had reason to know had business or financial relations with the West. Virginia Lottery, or conducted business or other activities which were regulated or monitored by the West Virginia Lottery.

10.   Under the terms of the Code of Conduct of the West Virginia Lottery, the Known Investigator also had an affirmative duty to promptly disclose and report to the Director of the West

Virginia Lottery the existence or possible existence of any conflict of interest and to file annually with the West Virginia Lottery a written statement disclaiming receipt of any gift, gratuity, or other thing of value from any licensee.

11. Under the provisions of the West Virginia Lottery "Personnel Policies" the Known Investigator had a duty to get approval from the Director of the Lottery or a supervisor before performing any official work outside of normal office hours.

## The Scheme

12. From approximately the fall of 2004 until approximately the summer of 2007, at or near Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., and the Known Investigator, who is named herein as a co-schemer and aider and abettor but not as a defendant, aided and abetted by each other, did devise and intend to devise a scheme to defraud, which involved misrepresentation and concealment of material fact, that is, to defraud the State of West Virginia, the West Virginia Lottery and the citizens of the State of West Virginia of the honest services of the Known Investigator as an Investigator II of and with the West Virginia Lottery.

## Purposes of the Scheme

13.   It was a purpose of defendants FERRELL and SOUTHERN AMUSEMENT in this scheme to procure and maintain the corrupt service and favor of the Known Investigator in her capacity as an Investigator II with the West Virginia Lottery.

14.   It was a purpose of the Known Investigator in this scheme to enrich herself through the unlawful receipt of cash payments from defendants FERRELL and SOUTHERN AMUSEMENT and to maintain her position as an Investigator II with the West Virginia Lottery.

## Manners and Means

15.   The Known Investigator and defendants FERRELL and SOUTHERN AMUSEMENT carried out this scheme through the following and other manners and means:

a.   It was a part of this scheme that defendant FERRELL would and did encourage the Known Investigator to apply for the position of Investigator II at the West Virginia Lottery.

b.   It was further a part of this scheme that the Known Investigator would from time to time perform and aid in the performance of maintenance on machines of defendants FERRELL and SOUTHERN AMUSEMENT while she was on state time and while she was being paid by the West Virginia Lottery.

c.   It was further a part of this scheme that the Known Investigator, in contravention of her official duties and the established practices and procedures of the West Virginia Lottery,

would and did personally respond to the after-hours requests and demands of defendant FERRELL and employees of defendant SOUTHERN AMUSEMENT by traveling to video lottery retailers in southern West Virginia outside of her normal working hours and without supervisory approval.

d.   It was further a part of this scheme that from time to time defendant FERRELL would and did give cash to the Known Investigator in return for services she provided and rendered to him and defendant SOUTHERN AMUSEMENT including her unauthorized and after-hours access to the sealed logic areas in video lottery machines.

e.   It was further a part of this scheme that from time to time defendant FERRELL would and did give the Known Investigator cash payments that were not in direct return for particular official services performed for him but were, rather, for the purpose of cultivating and insuring her continuing favoritism and availability to him in his operation of video lottery machines in southern West Virginia.

f.   It was further a part of this scheme that the Known Investigator would and did refrain from citing defendant SOUTHERN AMUSEMENT and its associated retailers for certain violations of lottery rules and regulations.

g.   It was further a part of this scheme that the Known Investigator would and did conceal from her supervisor and the West

Virginia Lottery and would and did fail to report and disclose to them that she was:

  i.   personally responding to requests and demands made of her by defendants FERRELL and SOUTHERN AMUSEMENT to attend to video lottery machines outside of normal office and business hours;

  ii.  refraining from citing defendant SOUTHERN AMUSEMENT and its associated retailers for certain violations of lottery rules and regulations; and

  iii. receiving cash payments from defendant FERRELL in connection with the performance of her official duties on behalf of defendants FERRELL and SOUTHERN AMUSEMENT.

### Use of the Mails

16.  On or about the following dates, in or near Logan and Chapmanville, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, for the purposes of executing this scheme and attempting so to do, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., together with the Known Investigator, who is not named herein as a defendant, aided and abetted by each other, did knowingly cause to be delivered by mail according to the direction thereon matters and things to be sent and delivered by the Postal Service, those being envelopes addressed to the West Virginia Lottery, Charleston, West Virginia, and containing West Virginia Lottery Conflict and Gifts &

Gratuities Disclaimers which were signed by the Known Investigator and which falsely reported that she had not received any gifts or gratuities from any licensee of the West Virginia Lottery:

| Count | Date |
|-------|------|
| 25 | August 1, 2005 |
| 26 | July 30, 2006 |
| 27 | Summer 2007 |
| 28 | Summer 2008 |

In violation of Title 18, United States Code, Sections 1341, 1346 and 2(a).

33

## COUNTS TWENTY-NINE THROUGH THIRTY-TWO

### Bribery in Connection with Agency
### Receiving Federal Funds

At all relevant times:

1.    The Known Investigator was an agent, that is, an "Investigator II," of an agency of the State of West Virginia, that is, the West Virginia Lottery.

2.    As a part of her duties as an Investigator II for the West Virginia Lottery, the Known Investigator was responsible for inspecting certain video lottery machines owned by defendant JOSEPH CLEVELAND FERRELL and by companies with which he was affiliated and the locations and establishments in which those machines were being operated for the purpose of insuring that those machines and establishments were being operated in accordance with the laws, regulations and policies governing the operation of video lottery machines in the State of West Virginia.

3.    In each of the calendar years from January 1, 2004, through December 31, 2008, the State of West Virginia received benefits in excess of Ten Thousand Dollars ($10,000.00) under any Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance.

4.    On or about the following dates, at or near the city of Logan, in Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL did knowingly and corruptly give, offer and agree to give anything of

34

value, that is, cash, to an agent of an agency of the State of West Virginia, that is, to the Known Investigator, an Investigator II with the West Virginia Lottery, with an intent to influence and reward her as an agent of the West Virginia Lottery, for certain corrupt acts, those being:

> (a) responding to requests for after-hours maintenance and repair calls outside the supervision of the West Virginia Lottery and contrary to its established policies and procedures, and

> (b) failing to report violations of law, policy, and regulation in the operation of video lottery machines owned by Southern Amusement Co., Inc.,

in connection with any business, transaction and series of transactions of the West Virginia Lottery involving anything of value of Five Thousand Dollars ($5,000.00) or more:

| Count | Date | Amount |
|-------|------|--------|
| 29 | February 18, 2006 | $300 |
| 30 | Mid-February 2007 | $300 |
| 31 | May 26, 2007 | $300 |
| 32 | June 11, 2007 | $2,000 |

In violation of Title 18, United States Code, Section 666(a)(2).

## COUNTS THIRTY-THREE THROUGH THIRTY-EIGHT

### MAIL FRAUD

### Introduction

1.   At all relevant times defendant JOSEPH CLEVELAND FERRELL was associated with and was an employee and agent of defendant SOUTHERN AMUSEMENT CO., INC. and was involved in supplying video lottery machines to various retail establishments in southern West Virginia and elsewhere and in the maintenance and servicing of those video lottery machines.

2.   At all relevant times a person known to the Grand Jury (hereinafter "the Known Employee") was a resident of Wyoming County, West Virginia, and had experience and training in running and maintaining certain of defendant SOUTHERN AMUSEMENT's video lottery collection routes and in repairing and maintaining some features of video lottery machines.

3.   At all relevant times the Known Employee was receiving monthly benefit checks from the Social Security Administration based on his continuing representation and certification to that agency that he was totally disabled and unable to pursue gainful employment.

4.   In approximately the spring of 2006 defendant FERRELL offered employment with defendant SOUTHERN AMUSEMENT to the Known Employee, and the Known Employee informed him that the Known Employee was receiving Social Security disability benefits and

36

would not accept employment unless defendant FERRELL would agree with him to conceal the fact of that employment from the Social Security Administration.

## The Scheme

5. From approximately the spring of 2006 until approximately July 2008, in or near Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., and the Known Employee, who is not named herein as a defendant, aided and abetted by each other, did knowingly devise and intend to devise a scheme to defraud that involved misrepresentation and concealment of material fact, that is, to defraud the Social Security Administration and to fraudulently obtain monthly disability benefits from the Social Security Administration.

## Purposes of the Scheme

6. It was the purpose of defendants FERRELL and SOUTHERN AMUSEMENT in this scheme to obtain the services of the Known Employee as a route driver and technician by agreeing with the Known Employee to conceal and by concealing from the Social Security Administration the fact that the Known Employee was employed by and receiving substantial compensation from defendant SOUTHERN AMUSEMENT.

7. It was the purpose of the Known Employee in this scheme to collect a salary from defendant SOUTHERN AMUSEMENT while

continuing to collect disability benefits from the Social Security Administration by concealing from that agency the fact that he was employed by and receiving substantial compensation from defendant SOUTHERN AMUSEMENT.

8.   It was the purpose of defendant FERRELL in this scheme to obtain and maintain the expertise and service of the Known Employee.

### Manners and Means

9.   Defendants FERRELL and SOUTHERN AMUSEMENT, together with the Known Employee, executed the above-charged scheme through the following, and other, manners and means:

a.   It was a part of this scheme defendant FERRELL would and did agree to hire the Known Employee as a route driver for defendant SOUTHERN AMUSEMENT, to pay the Known Employee in a secretive and covert manner, that is, in cash, hand to hand, and to refrain from generating records of his payments to the Known Employee, including IRS Forms 1099 and W-2.

b.   It was further a part of this scheme that on approximately a weekly basis from approximately the spring of 2006 to approximately July of 2008, defendant FERRELL would and did pay the Known Employee for his services to defendant SOUTHERN AMUSEMENT as a route driver and technician in cash, hand to hand, and further would and did refrain from generating documents recording or reflecting that employment and compensation, including IRS Forms 1099 and W-2.

38

c.   It was further a part of this scheme that the Known Employee would and did continue to work for defendant SOUTHERN AMUSEMENT as a route driver and technician and to receive compensation from defendant SOUTHERN AMUSEMENT for that work and would and did continue to collect from the Social Security Administration monthly benefit checks paid to him based on his continuing representations that he was unemployed, unable to pursue gainful employment and not receiving wages or salary and on the continuing concealment from the Social Security Administration that he was in fact working and receiving compensation for that work.

### The Mailings

10.   On or about the following dates, at or near Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, for the purposes of executing the scheme described above and attempting so to do, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., and the Known Employee, not named herein as a defendant, aided and abetted by each other, did knowingly cause to be delivered by mail according to the direction thereon matters and things to be sent and delivered by the Postal Service, those being envelopes addressed to the Known Employee at P. O. Box 862, Oceana, West Virginia, 24870, and containing United States Treasury Social Security Disability Compensation checks:

| Count | Date |
|-------|------|
| 33 | June 2, 2006 |
| 34 | September 2, 2006 |
| 35 | March 2, 2007 |
| 36 | September 2, 2007 |
| 37 | March 2, 2008 |
| 38 | July 3, 2008 |

In violation of Title 18, United States Code, Sections 1341 and 2(a).

## COUNT THIRTY-NINE

### Obstruction of Justice

1.    In approximately the spring of 2006 defendant JOSEPH CLEVELAND FERRELL entered into an agreement with a person whose identity is known to the Grand Jury (hereinafter "the Known Employee") whereby the Known Employee would be employed by Southern Amusement Co., Inc., as a route driver and maintenance man and would receive his compensation for such work surreptitiously, that is, in cash, and, further, whereby defendant FERRELL would refrain from generating certain records of those payments to the Known Employee, including Internal Revenue Service forms 1099 and W-2.

2.    At all relevant times, the Known Employee was employed by and provided services to Southern Amusement and defendant FERRELL paid him in cash on approximately a weekly basis and did not generate certain documents recording those payments, including Internal Revenue Service forms 1099 and W-2.

3.    In the fall of 2007 and continuing through 2008, a federal grand jury was convening in Huntington, West Virginia, and was investigating and concerned with allegations and evidence of violations of federal criminal laws in the conduct and operation of Southern Amusement and with the role of defendant FERRELL in the operation of that business and in any such criminal activity.

4.   On or about December 11, 2007, the Known Employee was served with a subpoena issued under the authority of the federal grand jury then convening in Huntington, West Virginia.

5.   Thereafter, the Known Employee informed defendant FERRELL that he had received a grand jury subpoena and that he expected to be questioned about his employment with and receipt of compensation from Southern Amusement.

6.   In approximately the spring of 2008, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL did knowingly and corruptly endeavor to influence, obstruct and impede the due administration of justice by:

a.   presenting to the Known Employee a document purporting to be a contract between Southern Amusement and the Known Employee which was false in that it stated that Southern Amusement was paying the Known Employee less money than that actually paid to him over the time of his employment there;

b.   signing that document as if it had been executed on May 1, 2006;  and

c.   causing the Known Employee to sign that document.

In violation of Title 18, United States Code, Section 1503.

## COUNT FORTY

### Obstruction of Justice

1.   The grand jury repeats and re-alleges paragraphs 1 through 5 of Count Thirty-Nine of this indictment as if fully set forth herein.

2.   In approximately the late spring of 2008, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL did knowingly and corruptly endeavor to influence, obstruct and impede the due administration of justice by:

   a.   presenting to the Known Employee a document purporting to be a contract between Southern Amusement and the Known Employee which was false in that it stated that Southern Amusement was paying the known person less money than that actually paid to him over the time of his employment there;

   b.   signing that document as if it had been executed on February 1, 2007;  and

   c.   causing the Known Employee to sign that document.

In violation of Title 18, United States Code, Section 1503.

## COUNT FORTY-ONE

### Aiding and Abetting Social Security Fraud

From approximately the spring of 2006 until approximately July of 2008, at or near the city of Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL, having knowledge of the occurrence of an event affecting the continued right of a person known to the Grand Jury (hereinafter "the Known Employee") to receive Social Security Disability Insurance benefits, that is, the fact that the Known Employee was then employed by and receiving compensation from Southern Amusement Co., Inc., did knowingly and willfully aid and abet the Known Employee in the concealment of and failure to disclose that employment and compensation to the Social Security Administration with an intent fraudulently to secure payment of Social Security disability benefits to the Known Employee in an amount greater than what was due the Known Employee.

In violation of Title 42, United States Code, Section 408(a)(4) and Title 18, United States Code, Section 2(a).

## COUNTS FORTY-TWO THROUGH FORTY-SEVEN

### Failure to Register

1.    In each of the calendar years set forth in paragraph 2 below, at or near Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., were engaged in the business of leasing, using, and making available for use by others certain gambling devices, and in that business defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., bought and received gambling devices knowing that those gambling devices had been transported in interstate and foreign commerce after the effective date of the Gambling Devices Act of 1962.

2.    In each of the following calendar years, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., knowingly failed to register with the Attorney General of the United States as required by 15 U.S.C. § 1173(a):

| Count | Year |
|-------|------|
| 42    | 2004 |
| 43    | 2005 |
| 44    | 2006 |
| 45    | 2007 |
| 46    | 2008 |
| 47    | 2009 |

In violation of Title 15, United States Code, Sections 1173(a)(3) and 1176.

## COUNT FORTY-EIGHT

### Willful Failure to Collect, Account for, and Pay Over Employment Taxes

1.     At all times relevant to this indictment, White Amusement Company was a corporation doing business in Logan, West Virginia, within the Southern District of West Virginia.

2.     Beginning in the 1990s and continuing until the present defendant JOSEPH CLEVELAND FERRELL acted as the general manager of White Amusement Company, exercising complete control over the business affairs of White Amusement Company, including approving payments by the company and controlling the bank accounts of White Amusement Company.

3.     As general manager of White Amusement Company, defendant JOSEPH CLEVELAND FERRELL was a "responsible person," that is, he was a person required under Title 26, United States Code, to collect, truthfully account for, and pay over the company's payroll taxes.

4.     From in or about January 2003 through January 2004, at or near Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL willfully failed to collect, truthfully account for and pay over to the Internal Revenue Service federal income taxes and Federal Insurance Contributions Act ("FICA") taxes due and owing to

the United States on behalf of White Amusement and its employees totaling approximately $38,726.63 for the year 2003.

In violation of Title 26, United States Code, Section 7202.

### COUNT FORTY-NINE

### Willful Failure to Collect, Account for,
### and Pay Over Employment Taxes

1.  The grand jury repeats and re-alleges paragraphs 1 through 3 of Count Forty-Eight of this indictment as if fully set forth herein.

2.  From in or about January 2004 through January 2005, at or near Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL willfully failed to collect, truthfully account for and pay over to the Internal Revenue Service federal income taxes and Federal Insurance Contributions Act ("FICA") taxes due and owing to the United States on behalf of White Amusement and its employees totaling approximately $38,048.41 for the year 2004.

In violation of Title 26, United States Code, Section 7202.

## COUNT FIFTY

### Willful Failure to Collect, Account for, and Pay Over Employment Taxes

1.  The grand jury repeats and re-alleges paragraphs 1 through 3 of Count Forty-Eight of this indictment as if fully set forth herein.

2.  From in or about January 2005 through January 2006, at or near Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL willfully failed to collect, truthfully account for and pay over to the Internal Revenue Service federal income taxes and Federal Insurance Contributions Act ("FICA") taxes due and owing to the United States on behalf of White Amusement and its employees totaling approximately $27,739.40 for the year 2005.

In violation of Title 26, United States Code, Section 7202.

### COUNT FIFTY-ONE

### Willful Failure to Collect, Account for,
### and Pay Over Employment Taxes

1.  The grand jury repeats and re-alleges paragraphs 1 through 3 of Count Forty-Eight of this indictment as if fully set forth herein.

2.  From in or about January 2006 through January 2007, at or near Logan, Logan County, West Virginia, and elsewhere within the Southern District of West Virginia, defendant JOSEPH CLEVELAND FERRELL willfully failed to collect, truthfully account for and pay over to the Internal Revenue Service federal income taxes and Federal Insurance Contributions Act ("FICA") taxes due and owing to the United States on behalf of White Amusement and their employees totaling approximately $14,581.83 for the year 2006.

In violation of Title 26, United States Code, Section 7202.

## FORFEITURE

1.  The allegations contained in Count One of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Rules 7(c)(2) and 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant JOSEPH CLEVELAND FERRELL that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of defendant's conviction under Count One of this Indictment.

2.  Defendant JOSEPH CLEVELAND FERRELL:

i.  has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.  has an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 (a)(2);

iii. has property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3.   The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

a.   at least $5 million and all interests and proceeds traceable thereto, including but not limited to the following assets:

all right, title, and interest in and to certain real property located in Logan County, West Virginia, being the real property described in the following deeds, acquired by defendant FERRELL by these and other deeds:

(1)   Lot 7, of surface, Stollings Subdivision, lying and being on Rocky Branch, Guyan District, and being more particularly described in that certain deed recorded in Deed Book 540 at 550;

(2)   104 acres, more or less, of surface, near Rocky Branch, Guyan District, and being more particularly described in that certain deed recorded in Deed Book 543 at 226;

(3) three parcels comprising 17 acres, more or less, of surface, on the waters of the Rocky Branch, a tributary of the Guyandotte River, and being more particularly described in that certain deed recorded in Deed Book 551 at 740 and that certain corrective deed recorded in Deed Book 559 at 564;

(4) 4.64 acres, more or less, of surface, near Rocky Branch, Guyan District, and being more particularly described in that certain deed recorded in Deed Book 552 at 713;

(5) Lots 5 and 6, of surface, Stollings Subdivision, lying and being on Rocky Branch, Guyan District, and being more particularly described in that certain deed recorded in Deed Book 555 at 171;

(6) 1.4 acres, more or less, of surface, lying and being on Rocky Creek, Guyan District, and being more particularly described in that certain deed recorded in Deed Book 566 at 106; and

(7) 1.428 acres, more or less, of surface, near Rocky Branch, and being more particularly described in that certain deed recorded in Deed Book 566 at 108.

b. all right, title, and interest, including, but not limited to, all shares of stock, in Southern Amusement Co., Inc.

## FORFEITURE

In accordance with 28 U.S.C. § 2461(c), 18 U.S.C. § 1955(d) and Rules 7(c)(2) and 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon his conviction of a violation as set forth below, defendant JOSEPH CLEVELAND FERRELL shall forfeit to the United States the sum of $527,540 in that such sum in aggregate constitutes property used in a violation of 18 U.S.C. § 1955 as set forth in Count Two.

## FORFEITURE

In accordance with 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), and Rules 7(c)(2) and 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon his conviction of a violation as set forth below, defendants JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., shall forfeit to the United States the sum of $31,571 in that such sum in aggregate constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341 as set forth in Counts Thirty-Three through Thirty-Eight.

**FORFEITURE**

1.    The allegations contained in Counts Forty-Two through Forty-Seven of this indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to Title 15, United States Code, Section 1177, and Title 28, United States Code, Section 2461(c).

2.    Pursuant to Rules 7(c)(2) and 32.2(a) of the Federal Rules of Criminal Procedure defendants JOE C. FERRELL and SOUTHERN AMUSEMENT CO., INC., are hereby notified that, upon conviction of a violation of Title 15, United States Code, Section 1173, as charged in Counts Forty-Two through Forty-Seven of this Indictment, defendant JOSEPH CLEVELAND FERRELL and SOUTHERN AMUSEMENT CO., INC., shall forfeit, pursuant to Title 15, United States Code, Section 1177, every gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed or used in such violations, including, but not limited to, any and all gambling device owned by them since 2003 and every limited video lottery machine presently owned by them.

56

## NOTICE OF INTENT TO FORFEIT SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture pursuant to (1) 18 U.S.C. § 1963(a), (2) 28 U.S.C. § 2461(c), (3) 18 U.S.C. § 1955(d), (4) 18 U.S.C. § 981(a)(1)(C), and (5) 15 U.S.C. § 1177, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, sold to, or deposited with a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 1963(m), 18 U.S.C. § 982(b), and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of said property listed above as being subject to forfeiture, that

was not otherwise forfeited to the United States pursuant to 18

U.S.C. § 1963(a), 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), 18

U.S.C. § 1955(d), and 15 U.S.C. § 1177.

CHARLES T. MILLER
UNITED STATES ATTORNEY

By: _____
HUNTER P. SMITH JR.
Assistant United States Attorney